**BROWN KWON & LAM LLP**
William Brown, Esq. (WB6828)
275 Fifth Avenue, Suite 1744
New York, NY 10175
Tel.: (718) 971-0326
Fax: (718) 795-1642
wbrown@bkllawyers.com
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **KIEFER BRAZIER,** **LUISAIRY GONZALEZ PENA,** and **LATASHA AUGUSTUS,** individually and on behalf of all others similarly situated, <br><br> **Plaintiffs,** <br><br> - against - <br><br> **REAL HOSPITALITY GROUP, LLC, and REAL PAYROLL GROUP, LLC,** <br><br> **Defendants.** | Case No: <br><br> **CLASS ACTION COMPLAINT** |

Plaintiffs, KIEFER BRAZIER, LUISAIRY GONZALEZ PENA and LATASHA AUGUSTUS (collectively "Plaintiffs"), individually and on behalf of all others similarly situated, upon personal knowledge as to themselves, and upon information and belief as to other matters, by and through their undersigned attorneys, hereby file this Class Action Complaint against Defendants, REAL HOSPITALITY GROUP, LLC and REAL PAYROLL GROUP, LLC, (collectively, "Defendants"), and allege as follows:

### INTRODUCTION

1. Plaintiffs bring this action on behalf of themselves and hundreds of other similarly situated workers, pursuant to the Workers Adjustment and Retraining Notification Act, 29 U.S.C.

§§ 2101 *et seq.* (the "WARN Act"), the New York State Worker Adjustment and Retraining Notification Act (the "NY WARN Act") Article 25-A, §§ 860 *et seq.* and applicable regulations, and the Federal Rule of Civil Procedure 23 ("Rule 23"), seeking damages as a result of Defendants' failure to timely provide Plaintiffs and Class Members with the proper required written notice after being subjected to a mass layoff or plant closing effectuated by Defendants.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1337.

3. This Court has jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

4. This Court additionally has diversity jurisdicton over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1332 as the amount in controversy exceeds $75,000 and Plaintiffs and Defendants are citizens of different states.

5. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## PARTIES

*Plaintiffs*

6. Plaintiff Kiefer Brazier is an adult who resides in Bronx County, New York.

7. Plaintiff Brazier worked as a Bellman for Defendants from around June 2018 until the termination of his employment on March 18, 2020.

8. Plaintiff Luisairy Gonzalez Pena is an adult who resides in New York County, New York.

9. Plaintiff Pena worked as a Human Resources Administrator for Defendants from September 11, 2019 until the termination of her employment on March 18, 2020.

10. Plaintiff Latasha Augustus is an adult who resides in San Diego County, California.

11. Plaintiff Augustus worked as a Front Desk Agent for Defendants from February 2, 2020 until the termination of her employment on March 18, 2020.

12. Plaintiffs were affected employees within the meaning of the WARN Act and the NY WARN Act.

13. Plaintiffs retained Brown, Kwon & Lam LLP to represent Plaintiffs in this action and have agreed to pay the firm a reasonable fee for its services.

*<u>Defendants</u>*

14. Defendant REAL HOSPITALITY GROUP, LLC is a foreign limited liability company organized under the laws of the State of Delaware with a principal place of business located at 12800 Hospitality Way, Ocean City, Maryland 21842, and address for service of process located at c/o Registered Agents Inc., 90 State Street, Suite 700, Office 40, Albany, New York 12207.

15. Defendant REAL PAYROLL GROUP, LLC is a foreign limited liability company organized under the laws of the State of Maryland with a principal place of business and address for service of process located at 9748 Stephen Decatur Hwy, Ocean City, Maryland 21842.

*CASSA HOTEL*

16. Cassa Hotel is a boutique hotel located at 66-70 West 45th Street, New York, New York 10036.

17. At all relevant times, Cassa Hotel has been owned and/or operated by Corporate Defendants.

18. During the relevant period, Plaintiffs worked at Cassa Hotel until it suspended operations due to Covid-19 on or around March 18, 2020.

19. Upon information and belief, at all relevant times, more than fifty (50) employees, not including Part-Time employees, were employed at Cassa Hotel.

### *REAL HOSPITALITY GROUP*

20. Real Hospitality Group ("RHG") is a nationwide hotel management company, which operates and manages dozens of resorts and hotels across sixteen (16) states. In fact, RHG operates and manages forty-three (43) hotels in New York City alone, including Cassa Hotel.

21. RHG offers a variety of services to both branded and independent properties. Upon information and belief, for a significant number of the properties in RHG's portfolio, RHG offers "total service property management," managing all aspects of the hotel's operations, including their human resources operations.

22. For such properties, including at Cassa Hotel, RHG directly manages nearly all aspects of the hotel's human resources and labor relations. For instance, at Cassa Hotel, RHG hired employees, determined and enforced employment policies, set employee compensation and benefits, created and distributed employment documents, maintained employment records, and distributed pay. RHG's corporate employees were directly involved in day-to-day employment decisions at Cassa Hotel.

23. The employee handbook distributed to employees at Cassa Hotel and, upon information and belief, employees at other hotels and resorts managed by RHG, was authored by RHG and included detailed employment policies determined by RHG.

24. Employees at Cassa Hotel and other properties managed by RHG received their paychecks from Real Payroll Group, LLC, which is owned and operated by RHG.

25. The General Manager of Cassa Hotel, Elizabeth Ardiles, was hired directly by RHG.

26. Employees at RHG were interchangeable amongst their hotel and resort properties.

27. Upon information and belief, at all relevant times, RHG employed more than one hundred (100) employees, not including part-time employees.

28. At all relevant times, Defendants jointly employed Plaintiffs and similarly situated employees.

29. At all relevant times, each Defendant had substantial control over Plaintiffs' and similarly situated employees' working conditions, and over the unlawful practices alleged herein.

30. At all relevant times, Defendants were and continue to be employers within the meaning of the WARN Act and the NY WARN Act.

## CLASS ACTION ALLEGATIONS

31. Plaintiffs bring this action pursuant to Rule 23, on behalf of themselves and a class of persons consisting of all affected employees employed by RHG and/or Cassa Hotel who were terminated as part of a plant closing and/or mass layoff in or after March 2020 (the "Class" or "Class Members").

32. Excluded from the Class are Defendants, Defendants' legal representatives, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; and all persons who will submit timely and otherwise proper requests for exclusion from the Class.

5

33. The members of the Class are readily ascertainable. The number and identity of the Class Members are determinable from Defendants' payroll and personnel records. For the purpose of notice and other purposes related to this class action, their names and contact information are readily available from Defendants' records. Notice can be provided by means permissible under Rule 23.

34. The potential number of Class Members is so numerous that joinder of all members is impracticable, and the disposition of their claims through this class action will benefit both the parties and the Court. Although the precise number of Class Members is unknown because the facts on which the calculation of that number rests presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class.

35. Plaintiffs' claims are typical of those claims which could be alleged by any Class Member, and the relief sought is typical of the relief which would be sought by each Class Member in separate actions.

36. Plaintiffs and Class Members were subject to the same violations of the WARN Act and the NY WARN Act, as alleged herein, of failing to provide proper and timely written notice to employees subject to a mass layoff or plant closing effectuated by Defendants.

37. Defendants' corporate-wide policies and practices affected all Class Members similarly.

38. Plaintiffs and Class Members have all sustained similar losses, injuries and damages arising from the same unlawful policies.

39. Plaintiffs are able and willing to fairly and adequately protect the interests of Class Members and have no interests antagonistic to Class Members.

40. Plaintiffs are represented by attorneys who are competent, skilled, and experienced in both class action litigation and employment litigation and have previously represented many plaintiffs and classes in employment cases.

41. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendant. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because the losses, injuries, and damages suffered by each individual Class Member are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for each Class Member to redress the wrongs done to them.

42. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of judicial and public resources; however, treating the claims as a class action would result in a significant saving of these costs. If appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

43. The prosecution of separate actions by individual Class Members would create a risk of inconsistent and/or varying adjudications with respect to each Class Member, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class Members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof.

44. Common questions of law and fact exist as to Class Members that predominate over any questions only affecting Plaintiffs and individual Class Members and include, but are not limited to, the following:

   a. Whether Defendants are "employers" under the WARN Act and the NY WARN Act;

   b. Whether Defendants jointly employed Class Members;

   c. Whether Defendants provided Class Members with timely written notice as required by the WARN Act and the NY WARN Act; and

   d. Whether Defendants furnished Class Members with the proper written notice as required by the WARN Act and the NY WARN Act.

## STATEMENT OF FACTS

45. On or around March 23, 2020, Cassa Hotel completely suspended its operations due to the outbreak of Covid-19.

46. Starting on March 18, 2020, Defendants provided Plaintiffs and other employees at Cassa Hotel written notice that they were being terminated effectively immediately. The notice to Plaintiff Kiefer Brazier is attached hereto as "Exhibit A." Upon information and belief, all employees received identical notices.

47. The notice provided to Cassa Hotel employees was created by RHG and used at their other hotel and resort properties throughout New York and nationwide who were similarly affected by the outbreak of Covid-19 between March 2020 and May 2020. Thus, hundreds if not thousands of RHG employees would have received the same defective notice.

48. The notice completely failed to inform Plaintiffs and Class Members if the layoff was due to a plant closing, the date of the closing, and an indication of whether bumping rights exist.

8

49. Furthermore, the notice fails to include any statement for the basis as to why Defendants were providing notice well after the required notification period. In fact, the notice makes no mention of Covid-19 or any other specific reasons for the layoff, and instead blames the layoff on a "recent economic downturn."

50. Upon information and belief, a significant number of affected employees did not receive any written notice for months after their termination date.

## STATEMENT OF CLAIM

## COUNT I

## VIOLATION OF THE WARN ACT

51. Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

52. At all relevant times, the Defendants employed one hundred (100) or more employees, exclusive of Part-Time employees, or employed one hundred (100) or more employees who in the aggregate worked at least four thousand (4,000) hours per week exclusive of hours of overtime within the United States.

53. The terminations in or after March 2020 of the employment of persons who worked at the various properties operated and controlled by Defendants resulted in the loss of employment for at least fifty (50) employees, excluding Part-Time employees.

54. The terminations in or after March 2020 of the employment of persons who worked at Cassa Hotel, or as the reasonably foreseeable consequence of those terminations, resulted in the loss of employment for at least thirty-three percent (33%) of Cassa Hotel's employees, excluding Part-Time employees.

55. Plaintiffs and the other Class Members were discharged without cause on their part on or about March 18, 2020, or thereafter as the reasonably expected consequence of the terminations that occurred on that date.

56. Plaintiffs and each of the other Class Members experienced an employment loss as part of or as the reasonably expected consequence of the mass layoff and/or plant closing that took place on or about March 18, 2020, or thereafter.

57. The WARN Act requires that unrepresented employees receive notice which contains the following language:

> a. A statement as to whether the planned action is expected to be permanent or temporary and, if the entire plant is to be closed, a statement to that effect;
>
> b. The expected date when the plant closing or mass layoff will commence and the expected date when the individual employee will be separated;
>
> c. An indication whether or not bumping rights exist; and
>
> d. The name and telephone number of a company official to contact for further information.
>
> 20 C.F.R. § 639.7(d).

58. Defendants failed to provide a notice which included a statement that the entire plant is to be closed and an indication of whether or not bumping rights exist.

59. Prior to their terminations, Plaintiffs and other Class Members did not receive written notice at least sixty (60) days in advance of the termination of their employment. The notice Defendants provided failed to include a statement setting for the basis for reducing the notification period. 29 U.S.C. § 2102(b)(3).

60. Upon information and belief, a number of affected employees did not receive notice as soon as practicable under the circumstances, with some employees not receiving any notice for months after their terminations.

61.    Due to Defendants' violations of the WARN Act, Defendants are liable to Plaintiffs and Class members for back pay and benefits for each day of the violation up to a maximum of sixty (60) days, as well as reasonable attorneys' fees and costs.

### COUNT II

### VIOLATION OF THE NY WARN ACT

62.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

63.    At all relevant times, Defendants employed fifty (50) or more employees, exclusive of Part-Time employees, or employed fifty (50) or more employees who in the aggregate worked at least two thousand (2,000) hours per week exclusive of hours of overtime within New York State.

64.    The terminations in or after March 2020 of the employment of persons who worked at the various properties operated and controlled by Defendants resulted in the loss of employment for at least twenty-five (25) employees, excluding Part-Time employees.

65.    The terminations in or after March 2020 of the employment of persons who worked at Cassa Hotel, or as the reasonably foreseeable consequence of those terminations, resulted in the loss of employment for at least thirty-three percent (33%) of Cassa Hotel's employees, excluding Part-Time employees.

66.    Plaintiffs and the other Class Members were discharged without cause on their part on or about March 18, 2020, or thereafter as the reasonably expected consequence of the terminations that occurred on that date.

67. Plaintiffs and each of the other Class members experienced an employment loss as part of or as the reasonably expected consequence of the mass layoff and/or plant closing that took place on or about March 18, 2020, or thereafter.

68. The NY WARN Act requires that unrepresented employees receive notice which contains the following language:

   a. The expected date of the first separation of employees and the date when the individual employee will be separated;

   b. A statement as to whether the planned action is expected to be permanent or temporary, and whether the entire plant is to be closed. If the planned action is expected to affect identifiable units of employees differently, e.g., should the employer expect a layoff of one unit to be temporary and the layoff of another unit to be permanent, the notice shall so indicate;

   c. A statement as to whether bumping rights exist;

   d. The name and telephone number of an employer representative to contact for further information; and

   e. Information concerning unemployment insurance, job training, and re-employment services for which affected employees may be eligible. Such information shall, at a minimum, include the following notice:

   "You are also hereby notified that, as a result of your employment loss, you may be eligible to receive job retraining, re-employment services, or other assistance with obtaining new employment from the New York State Department of Labor or its workforce partners upon your termination. You may also be eligible for unemployment insurance benefits after your last day of employment. Whenever possible, the New York State Department of Labor will contact your employer to arrange to provide additional information regarding these benefits and services to you through workshops, interviews, and other activities that will be scheduled prior to the time your employment ends. If your job has already ended, you can also access reemployment information and apply for unemployment insurance benefits on the Department's website or you may use the contact information provided on the website or visit one of the Department's local offices for further information and assistance."

   12 N.Y.C.R.R. § 921-2.3(b).

69. Defendants failed to provide a notice which included a statement as to whether the entire plant is to be closed, an indication of whether or not bumping rights exist, or any

information concerning unemployment insurance, job training, and re-employment services for which affected employees may be eligible.

70. Prior to their terminations, Plaintiffs and the other Class members did not receive written notice at least ninety (90) days in advance of the termination of their employment. The notice Defendants provided failed to include a statement setting for the basis for reducing the notification period. 12 N.Y.C.R.R. § 921-6.1.

71. Upon information and belief, a number of affected employees did not receive notice as soon as practicable under the circumstances, with some employees not receiving any notice for months after their terminations.

72. Due to Defendants' violations of the NY WARN Act, Defendants are liable to Plaintiffs and Class Members for back pay and benefits for each day of the violation up to a maximum of sixty (60) days as well as reasonable attorneys' fees and costs of this action.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and the Class, respectfully request that this Court grant the following relief:

a. An award of damages in favor of Plaintiffs and each Class Member against Defendants equal to the sum of (a) wages, salary, commissions, bonuses, accrued pay for vacation and personal days, for sixty (60) days; (b) pension, 401(k) contributions, health and medical insurance and other fringe benefits for sixty (60) days; and (c) medical expenses incurred during the sixty (60) day period following their respective terminations that would have been covered and paid under the Defendants' health insurance plans had coverage under that plan continued for such period, all determined in accordance with the WARN Act and the NY WARN Act.

    b.  Appointment of Plaintiffs as Class Representatives;

    c.  Appointment of the undersigned as Class Counsel;

    d.  Pre-judgment and post-judgment interest;

    e.  Reasonable attorneys' fees and costs of this action;

    f.  Such other and further relief as this Court deems just and proper.

Dated: October 3, 2020          Respectfully submitted,

**BROWN, KWON & LAM LLP**

By:   */s/ William Brown*

William Brown, Esq. (WB 6828)
275 Fifth Avenue, Suite 1744
New York, NY 10175
Tel.: (718) 971-0326
Fax: (718) 795-1642
wbrown@bkllawyers.com
*Attorneys for Plaintiffs*

# EXHIBIT A

HOTEL        **HOSPITALITY GROUP**



March 18, 2020

Kiefer Brazier

Dear Kiefer,

As you know, our business is a dynamic one and change is inevitable. Reorganizations, productivity initiatives, market demands, and profitability issues—any one of these situations may require organization redesign and reallocation of resources. As a business, we've had to make a very difficult but necessary decision to realign our hotel for improved workflow and efficiencies due to the recent economic downturn.

This decision requires us to inform that you are being laid off from your position as Bellman at Cassa Hotel New York effective March 18, 2020. This layoff action is indefinite in duration. I wish to ensure you that this lay off is not related to your job performance but a business decision. You will receive your last paycheck on March 20, 2020 for all hours worked up to March 18, 2020. Your final paycheck will be a live check. If you have accrued vacation time this will be paid out in your final paycheck. If you are enrolled in health benefits your coverage will continue until March 31, 2020. If you are enrolled in a 401k program please contact Oasis at 844-627-4015 for available options.

I realize that this will be a difficult time for you; however, I urge you to direct your attention and energies to your future. We wish you the best in your future endeavors. Please let us know if I can assist you during your transition. Please direct employment references to my attention so I may quickly respond to them. You may forward them to me at Elizabeth.ardiles@cassahotelnewyork.com. In this regard, feel free to contact me at 212-302-8700 if you have any questions. You may also contact our corporate Human Resources representative, Slyne Louissaint at 646-350-0398 or slyne.louissaint@rhgcorp.com with any human resource related questions. I thank you for your contributions to our business.

Sincerely,


Elizabeth Ardiles
General Manager