**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

**KIEFER BRAZIER,**
**LUISAIRY GONZALEZ PENA,**
**and LATASHA AUGUSTUS,**
**individually and on behalf of all others similarly**
**situated,**

                **Plaintiffs,**

     **- against -**

**REAL HOSPITALITY GROUP, LLC, and**
**REAL PAYROLL GROUP, LLC,**

             **Defendants.**

**Case No: 20-cv-08239(VM)**

---

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION**
**FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, CERTIFICATION OF**
**THE SETTLEMENT CLASS, APPROVAL OF CLASS COUNSEL'S ATTORNEYS'**
**FEES, APPROVAL OF SERVICE PAYMENT TO NAMED PLAINTIFFS, APPROVAL**
**OF SETTLEMENT ADMINISTRATOR'S FEES**
**AND DISMISSAL OF THIS ACTION WITH PREJUDICE**

---

**BROWN KWON & LAM, LLP**
William Brown, Esq.
521 Fifth Avenue, 17th Floor
New York, NY 10175
Tel.: (212) 295-5828
Fax: (718) 795-1642
wbrown@bkllawyers.com
*Attorneys for Plaintiff*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT………………………………………………………...…1

FACTUAL AND PROCEDURAL BACKGROUND…………………………………….....1

I.      PLAINTIFFS' ALLEGATIONS……………….…..……………………………... 1

II.     PROCEDURAL HISTORY, DISCOVERY AND SETTLEMENT NEGOTIATIONS.....2

III.    PRELIMINARY APPROVAL AND NOTICE TO THE CLASS…………..…………...2

SUMMARY OF THE SETTLEMENT AGREEMENT…………..………..…………………...3

I.      THE SETTLEMENT AMOUNT………………………...…………………………...3

II.     RELEASE OF CLAIMS…………………………………………...………………...4

III.    ALLOCATION OF SETTLEMENT FUNDS……...…………………………………...4

IV.     SERVICE AWARDS………………………………………………………………...5

V.      GENERAL RELEASE PAYMENTS………………………………………………...5

VI.     ATTORNEYS' FEES AND SETTLEMENT ADMINISTRATOR'S COST…..………...5

ARGUMENT…………………………………………………………………..............6

I.      THE PROPOSED SETTLEMENT IS FAIR, REASONABLE AND
        ADEQUATE AND SHOULD BE APPROVED…………………………………………6

        A. The Settlement is Procedurally Fair………………..………………………………...6

        B. The Settlement is Substantively Fair…………………..…………………………...8

            1. Grinnell Factor No. 1: Litigation Through Trial
            Would be Complex, Costly, and Long……………………………………………9

            2. Grinnell Factor No. 2: The Reaction of the Class Has Been Positive………...…9

            3. Grinnell Factor No. 3: Discovery Had Advanced
            Far Enough to Allow the Parties to Resolve the Case Responsibly……………..10

            4. Grinnell Factor Nos. 4 and 5: Plaintiffs Would Face Real
            Risks if the Case Proceeded…………………………………………………..…11

            5. Grinnell Factor No. 6: Establishing a Class and
            Maintaining it Through Trial Would Not Be Simple……………………………11

i

6. Grinnell Factor No. 7: Defendants' Ability to
Withstand a Greater Judgement is Not Clear…………………………………12

7. Grinnell Factor Nos. 8 and 9: The Settlement
Amount is Substantial Even in Light of the Best
Possible Recovery and the Attendant Risks of Litigation………………………12

II.    THE SETTLEMENT CLASS SHOULD BE CERTIFIED…………...……………….....13

   A.  The Settlement Class Meets the Legal Standard for Class Certification….…………13

   B.  Certification is also Proper Under Rule 23(b)(3)……………………………………15

III.   THE SERVICE AWARDS SHOULD BE AWARDED TO PLAINTIFFS...…………..16

   A.  Service Awards to Named Plaintiffs……………………………………..…..…………16

   B.  General Release Payments to Named Plaintiffs…………………………….…………18

IV.   CLASS COUNSEL'S ATTORNEYS' FEES SHOULD BE APPROVED……………..19

   A.  The Proposed Fee is Reasonable Under the Six *Goldberger* Factors……………….20

      1. Time and Labor Expended by Counsel……………………………………………21

      2. The Magnitude and Complexities of the Litigation……………………....22

      3. Risk of Litigation……………………………………………………………...22

      4. Quality of Representation……………………………………………....…..24

      5. Fee in Relation to the Settlement ………………………….………………25

      6. Public Policy Considerations…………………………………………………26

   B.  The Lodestar Cross Check Further Supports an Award to Class Counsel
of One-Third of the Gross Settlement Fund…………………………………..…………26

V.    THE SETTLEMENT ADMINISTRATOR'S FEES ARE REASONABLE ………...…27

VI.   CONCLUSION……………………………………………………………………..……28

# TABLE OF AUTHORITIES

*Cases*

*Amchem Prods. v. Windsor,* 521 U.S. 591 (1997)……………………………………………..15

*Baten v. Mr. Kabob Rest. Inc.*, No. 16-cv-9559 (VSB),
2019 U.S. Dist. LEXIS 234811 (S.D.N.Y. Oct. 18, 2019)………………………………………19

*Beckman v. KeyBank, N.A.*, 293 F.R.D. 467 (S.D.N.Y. Apr. 29, 2013)…………………,16, 25-28

Broad. Music, Inc. v. Pamdh Enters., Inc., No. 13-cv-2255 (KMW),
2014 U.S. Dist. LEXIS 84409 (S.D.N.Y. June 19, 2014)………………………………………..28

*Chang v. Philips Bryant Park LLC,* 2020 U.S. Dist. LEXIS 99985 (S.D.N.Y. June 5, 2020)…..19

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974)…………………………………...8

*Consol. Rail Corp. v. Town of Hyde Park,* 47 F.3d 473 (2d Cir. 1995)…………………………14

*Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91 (2d Cir. 2007)……..15

*D'Amato v. Watman*, 236 F.3d 78 (2d Cir. 2001)……………………………………………..6, 7, 10

*Delijanin v. Wolfgang's Steakhouse, Inc.*, 18-cv-7854(LJL)(KHP),
2021 U.S. Dist. LEXIS 27462 (S.D.N.Y. Feb. 12, 2021)………………………………………..19

*Denney v. Deutsche Bank AG,* 443 F.3d 253 (2d Cir. 2006)……………………………………14

*Emeterio v. A& P Rest. Corp.*, 2022 U.S. Dist. LEXIS 14598 (S.D.N.Y. Jan. 26, 2022)…..19

*Espinoza v. 953 Assocs. LLC*, 280 F.R.D. 113 (S.D.N.Y. 2011)………………………………...15

*Frank v. Eastman Kodak Co.*, 228 F.R.D. 174 (W.D.N.Y. Apr. 29, 2005)………………...13

*Gen Tel. Co. of Sw v. Falcon*, 457 U.S. 147 (1982)……………………………………………..14

*Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43 (2d Cir. 2000)…………21, 24, 26-28

*Guippone v. BH S&B Holdings, LLC*, 2011 U.S. Dist. LEXIS 126026
(S.D.N.Y. Oct. 28, 2011)………………………………………………………………18, 22, 26

*Hicks v. Morgan Stanley & Co.*, 2005 U.S. Dist. LEXIS 24890
(S.D.N.Y. Oct. 19, 2005)…………………………………………………………………20, 23, 27

*In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164 (S.D.N.Y. 2000)………….9

*In re Dreyfus Aggressive Growth Mut. Fund Litigation*,
2001 U.S. Dist. LEXIS 8418 (S.D.N.Y. June 22, 2001)……………………………………23

*In re Gilat Satellite Networks, Ltd.*, 2007 U.S. Dist. LEXIS 68964
(E.D.N.Y. Sept. 18, 2007)……………………………………………………………………..26

*In re Interpublic Secs.*, 2004 U.S. Dist. LEXIS 21429 (S.D.N.Y. Oct. 26, 2004)………….20

*In re Lloyd's Am. Trust Fund Litig.*, 2002 U.S. Dist. LEXIS 22662
(S.D.N.Y. Nov. 26, 2002)………………………………………………………………………...28

*In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393 (S.D.N.Y. 1999)………………………27

*In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 (3d Cir. 2004)……………………………10

*Joel A. v. Giuliani*, 218 F.3d 132 (2d Cir. 2000)……………………………………………………6

*Kelen v. World Fin. Network Nat. Bank*, 302 F.R.D. 56 (S.D.N.Y. 2014)……………………..6

*Knapp v. Badger Techs., Inc.*, 2015 U.S. Dist. LEXIS 77186 (W.D.N.Y. June 15, 2015)…26

*Maley v. Del Global Techs. Corp*, 186 F. Supp. 2d 358 (S.D.N.Y.)……………………………26

*Marisol A. by Forbes v. Giuliani*, 126 F.3d 372 (2d Cir. 1997)…………………………………14

*McReynolds v. Richards-Cantave*, 588 F.3d 790 (2d Cir. 2009)……………………………7, 8

*Mills v. Capital One*, 2015 U.S. Dist. LEXIS 133530  (S.D.N.Y. Sept. 30, 2015)……………6, 7

*Ortiz v. Chop't Creative Salad Co.*, 89 F. Supp. 3d 573 (S.D.N.Y. Jan. 16, 2015)………...17

*Parker v. Jekyll & Hyde Entm't Holdings, L.L.C.*,
2010 U.S. Dist. LEXIS 12762 (S.D.N.Y. Feb. 9, 2010)……………………………………17

*Pinsker v. Borders, Inc. (In re BGI, Inc.),* 465 B.R. 365 (Bankr. S.D.N.Y. Feb. 17, 2012)……..14

*Reyes v. Altamarea Group*, 2011 U.S. Dist. LEXIS 115984 (S.D.N.Y. Aug. 16, 2011)…...16

*Silberblatt v. Morgan Stanley*, 524 F. Supp. 2d 425 (S.D.N.Y. 2007)……………………...18

*Sukhnandan v. Royal Health Care of Long Island LLC*,
2014 U.S. Dist. LEXIS 105595 (S.D.N.Y. July 31, 2014)……………………………...23, 26

*Taft v. Ackermans*, 2007 U.S. Dist. LEXIS 9144 (S.D.N.Y. Jan. 31, 2007)………………..25

*Toure v. Amerigroup Corp.*, 2012 U.S. Dist. LEXIS 110300 (E.D.N.Y. Aug. 6, 2012)….7, 10, 14

United States ex rel. Fox Rx, Inc. v. Omnicare, Inc., No. 12 Civ. 275 (DLC),
2015 U.S. Dist. LEXIS 49477 (S.D.N.Y. Apr. 15, 2015)…………………………………………..28

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.,* 396 F.3d 96 (2d Cir. 2005)………………………7, 21

## PRELIMINARY STATEMENT

Plaintiffs Kiefer Brazier, Luisary Gonzalez Pena, and Latasha Augustus ("Named Plaintiffs"), on behalf of all others similarly situated, respectfully submits this unopposed motion, (referred to herein as the "Motion for Final Approval"), for an Order from the Court granting: (1) Final Approval of the Class Action Settlement, (2) Certification of the Settlement Class, (3) Approval of Class Counsel's Attorneys' Fees, (4) Approval of the Service and General Release Payments to Named Plaintiffs, (5) Approval of Settlement Administrator's Fees, and (6) Dismissal of this Action with Prejudice. Defendants, Real Hospitality Group, LLC and Real Payroll Group, LLC (collectively, "RHG" or "Defendants" and together with Named Plaintiffs, "the Parties"), do not oppose this Motion for Final Approval. The Parties settled the herein matter for a Gross Settlement Amount (as defined below) of Three Hundred Thousand Dollars ($300,000).

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    PLAINTIFFS' ALLEGATIONS

On October 3, 2020, Named Plaintiffs, who were all formerly employed at Cassa Hotel, a property managed by Defendants in New York, brought claims against Defendants pursuant to the Workers Adjustment and Retraining Notification Act, 29 U.S.C. §§ 2101 *et seq.* (the "WARN Act"), and the New York State Worker Adjustment and Retraining Notification Act (the "NY WARN ACT") for failure to provide a proper notice following a plant closure/mass layoff, as defined by those statutes.

Named Plaintiffs brought this case on behalf of themselves, as well as a putative class of similarly situated employees, which includes all current or former employees of RHG and/or Cassa Hotel who were also terminated as part of the mass layoff in or after March 2020 (referred herein as the "Class" or "Class Members"). Specifically, on or around March 23, 2020, Cassa Hotel suspended its operations due to the outbreak of Covid-19, resulting in the termination of Named

1

Plaintiffs and Class Members' employment. Plaintiffs allege that Defendants' notice of termination to Named Plaintiffs and Class Members failed to comply with the requirements under the WARN Act and NY WARN Act.

## II.    PROCEDURAL HISTORY, DISCOVERY AND SETTLEMENT NEGOTIATIONS

During the course of litigation, counsel for the parties engaged in extensive settlement negotiations. To facilitate such discussions, on April 1, 2021, the parties jointly requested a referral to Magistrate Judge Freeman for a settlement conference. Dkt. No. 19. Prior to the scheduled settlement conference with Judge Freeman, on or about July 9, 2021, the Parties were able to reach a settlement in principle for the Class (the "Settlement"). *See* Affirmation of William Brown in Support of Plaintiffs' Unopposed Motion for Final Approval ("Brown Aff."), ¶ 7.

Throughout this period, Plaintiffs' counsel analyzed class data supplied by Defendants, including putative Class Members' gross earnings for the period from January 2020 to March 2020. *Id.* Based on Defendants' data for that representative period, damages for the Class were estimated to be $323,232.20. *Id.* Following several rounds of negotiations, the Parties finally reached an agreement in principle for the Class in the amount of $279,000, which represents more than 86% of the putative Class's estimated damages based on records provided by Defendants. The Settlement further includes general release payments to the Named Plaintiffs in the total amount of $21,000, bringing the total settlement amount to $300,000 (the "Gross Settlement Amount").

The parties negotiated the remaining terms of the settlement over the course of more than four months, which were memorialized in the Class Settlement Agreement and Release (the "Settlement Agreement"). *See* Exhibit A attached to Brown Aff. ¶ 8.

### III.    PRELIMINARY APPROVAL AND NOTICE TO THE CLASS

On November 10, 2021, Plaintiffs filed their Unopposed Motion for Preliminary Approval of Class Action Settlement. *See* Dkt Nos. 33-35. On November 12, 2021, the Court granted Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement, directed notice to be mailed to Class Members, and set a date for the Final Fairness Hearing. *See* Dkt. No. 36. On December 1, 2021, Rust Consulting, Inc. ("RUST"), the Settlement Administrator, mailed the Court-approved Class Notice to 46 Class Members.  *See* Brown Aff. ¶ 21; Declaration of Abagail Schwartz "Schwartz Decl." ¶ 8.  Following this mailing, the Parties agreed to add a single RHG employee as a Class Member who was not initially included on the class list.  *See* Brown Aff. ¶ 23.  The Court-approved Class Notice was mailed to this additional Class Member on or about January 14, 2022.  Brown Aff. ¶ 23; Schwartz Decl. ¶ 9.  The Bar Date for the Class was February 1, 2022, and for the Class Member who received a late notice, the additional Class Member's Bar Date was extended from February 1, 2022 to February 28, 2022. *See* Brown Aff. ¶¶ 22 and 23; Schwartz Decl. ¶ 9.

The Court-approved Class Notice informed Class Members of the terms of the Settlement Agreement, their right to either object to or opt out from the Settlement, including notice of the applicable deadlines, information regarding the Final Approval Hearing, and who Class Members should contact for additional information. The Court-approved Class Notice further informed Class Members of the Named Plaintiffs' request for service awards, notice of the separate general release provisions and payments for the Named Plaintiffs, Class Counsel's intention to seek one-third of the Gross Settlement for attorneys' fees, and a fee for the Settlement Administrator.

During the class notice period, three (3) Class Members reached out to Class Counsel to discuss the terms of the Settlement Agreement.  As of the Bar Date (and to present), no Class

Members have requested to opt out of the Settlement and no Class Members have objected to the Settlement.  Brown Aff. ¶ 24.

<b><u>SUMMARY OF THE SETTLEMENT AGREEMENT</u></b>

**I.     THE SETTLEMENT AMOUNT**

The Settlement Agreement calls for Defendants to pay a total of $300,000, the Gross Settlement Amount, to settle this action, which consists of $279,000 for the Class and $21,000 as payment to the Named Plaintiffs for agreeing to a general release.  *See* Exhibit A.  The Gross Settlement Amount is all inclusive, and includes payments to Class Members, service awards to Named Plaintiffs, payments to Named Plaintiffs for their general release, administration costs, and attorneys' fees.  *Id.* Class Members who do not opt out of the Settlement are authorized to receive payment ("Authorized Claimants") and will have ninety (90) days from the date of mailing to endorse their settlement check (the "Acceptance Period").  *Id.* at 3.5(D).  Authorized Claimants may request a replacement check within the Acceptance Period, which will remain valid for sixty (60) days after the date of issue.  *Id.*  Any checks that are not claimed within the above timeframe will be void.  Furthermore, any uncashed settlement checks or service awards, after payment of any unforeseen expenses, will, subject to the Court's approval, be donated to City Harvest, located at 6 East 32nd Street, 5th Floor, New York, NY 10016.  Brown Aff. ¶ 15, Exhibit A at ¶ 3.5(E).

**II.    RELEASES OF CLAIMS**

The Settlement Agreement provides that all Class Members who do not timely opt out of the settlement will release their claims that were or could have been asserted based on the allegations in the Complaint, including those under the WARN Act and NY WARN Act. Regardless of whether Class Members sign, negotiate, deposit, endorse or cash their settlement check, any Class Member who did not opt out will be bound by this release. Class Members were given the opportunity to opt-out of the settlement by providing a signed written statement

4

indicating their intent to opt-out.  Exhibit A at ¶ 4.1.  No Class Members have opted out of the Settlement.  Brown Aff. ¶ 24; Schwartz Decl. ¶ 12.

## III.    ALLOCATION OF SETTLEMENT FUNDS

Under the Settlement Agreement, Authorized Claimants are entitled to receive a proportionate share of the "Net Settlement Fund," which is the remainder of the Gross Settlement Amount, after the deduction of costs, attorneys' fees, administrative fees, service awards, and payment for the Named Plaintiffs' general release.  Brown Aff. ¶ 16; Exhibit A at ¶ 3.5(A).  A Class Member's proportionate share is determined as follows:

- Each Class Member's average weekly earnings are calculated by dividing the gross wages that each Class Member received during the twelve (12) week period from January 3, 2020 to March 27, 2020, by twelve (12).
- Each Class Member shall then be assigned one (1) point for every dollar of his or her average weekly earnings, rounded to the nearest dollar.
- Each Class Member's proportionate share is determined by adding all points for Authorized Claimants to obtain a "Total Denominator," and then dividing the points for each Class Member by the Total Denominator to obtain each Class Member's "Portion of the Net Settlement Fund."
- Each Class Member's individual settlement award is then calculated by multiplying each Class Member's Portion of the Net Settlement Fund by the Net Settlement Fund.

Only Authorized Claimants, i.e., Class Members who do not opt out, are eligible to receive a settlement check.  Brown Aff. ¶ 16.

## IV.    SERVICE AWARDS

In addition to their individual allocations under the Settlement Agreement, Named Plaintiffs are also requesting service payments ("Service Award") for their efforts rendered on behalf of the class.  Each of the three Named Plaintiffs will apply to receive up to $3,000 each as a Service Award from the Settlement Amount.  Brown Aff. ¶ 25, Exhibit A, at ¶ 3.3.

## V.    GENERAL RELEASE PAYMENTS

In addition to the above Service Awards, Named Plaintiffs are further requesting approval of "Release Payments" of $7,000 for each of the Named Plaintiffs, which are made in consideration for a general release which encompasses claims beyond those which are being released by the Class. Exhibit A, ¶ 3.3.

## VI.    ATTORNEYS' FEES AND SETTLEMENT ADMINISTRATOR'S COSTS

As part of its application for final approval, Plaintiffs' counsel will request attorneys' fees in the amount of $100,000, which is one-third (1/3) of the Gross Settlement Amount. In addition, Plaintiffs will petition the Court to approve up to $10,000 for the Settlement Administrator's fees for reimbursement of actual costs and expenses to be paid from the Gross Settlement Amount. Brown Aff. ¶¶ 20 and 28; Schwartz Decl. ¶ 14.

## ARGUMENT

## I.    THE PROPOSED SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE AND SHOULD BE APPROVED

Rule 23 requires judicial approval of any compromise of claims brought on a class-wide basis. Fed. R. Civ. P. 23(e); *D'Amato v. Watman*, 236 F.3d 78, 85 (2d Cir. 2001). In deciding whether to approve a settlement, courts should give "proper deference to the private consensual decision of the parties," and keep in mind "the unique ability of class and defense counsel to assess the potential risks and rewards of litigation." *Kelen v. World Fin. Network Nat. Bank*, 302 F.R.D. 56, 68 (S.D.N.Y. 2014).

"Although there is a general policy favoring settlements, the court may approve a class action settlement only if it 'is fair, adequate, and reasonable, and not a product of collusion.'" *Mills v. Capital One*, 2015 U.S. Dist. LEXIS 133530 at *11 (S.D.N.Y. Sept. 30, 2015), quoting *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000). Courts in the Second Circuit consider the fairness of the settlement by looking at the negotiating process that led to the settlement and the

substantive terms of the settlement. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.,* 396 F.3d 96, 116 (2d Cir. 2005) (noting the "strong judicial policy in favor of settlements, particularly in the class action context") (citing *D'Amato*, 236 F.3d at 85).   The requires that courts consider "both procedural and substantive fairness."  *See Mills*, 2015 U.S. Dist. LEXIS 133530 at *11.

### A.  The Settlement is Procedurally Fair

With respect to procedural fairness, the Second Circuit has set forth that a "District Court reviewing a proposed settlement 'must pay close attention to the negotiating procees, to ensure that the settlement resulted from arm's length negotiations and that plaintiffs' counsel . . . possessed the [necessary] experience and ability, and have engaged in discovery . . . .'" *McReynolds v. Richards-Cantave*, 588 F.3d 790, 803 (2d Cir. 2009), quoting *D'Amato*, 236 F.3d at 85.  Courts in the Second Circuit have recognized a "presumption of fairness, reasonableness, and adequacy as to the settlement where 'a class settlement [is] reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Id.*, quoting *Wal-Mart Stores, Inc.*, 363 F.3d at 116 (internal quotation marks omitted).

Here, the Settlement in this case is procedurally fair because the Settlement Agreement was reached after Class Counsel conducted a thorough investigation of the claims and defenses, engaged in discovery, including the review of class data for the putative class which allowed Class Counsel to assess Named Plaintiffs' claims and to calculate potential damages for the Class, and following several months of ongoing settlement negotiations between the Parties.  *See Toure v. Amerigroup Corp.*, 2012 U.S. Dist. LEXIS 110300 at *7 (E.D.N.Y. Aug. 6, 2012) (finding procedural fairness where "the settlement was reached after Class Counsel had conducted a thorough investigation of the facts and engaged in significant discovery, and after extensive negotiations between the parties"); *see also Mills*, 2015 U.S. Dist. LEXIS 133530 at *12 (finding

procedural fairness where the parties "exchanged information and documents that enabled both sides to assess plaintiffs' claims and calculated potential damages"); *see also McReynolds*, 588 F.3d at 804 (finding procedural fairness where "negotiations between the parties were extended over a two-year period, substantial discovery had been completed, class members were given the opportunity to object to the terms of the Settlement Agreement").

Specifically, Class Counsel engaged in a substantive investigation of the WARN Act and NY WARN ACT notices provided by Defendants to Named Plaintiffs, each having received the same notice; conducted in-depth intakes of each of the Named Plaintiffs; conducted research regarding the claims, defenses and damages; and analyzed class data regarding class liability damages pursuant to the alleged WARN Act and NY WARN ACT notice violations.  Brown Aff. ¶ 9. Since Defendants filed their Answer on January 15, 2021, the Parties had engaged in settlement discussions throughout the course of litigation, including agreeing to participate in a settlement conference before Magistrate Judge Freeman to facilitate such discussions.  *See* Dkt. No. 6.  The Parties submitted their request for a settlement conference on April 1, 2021.  *Id.*  Prior to the scheduled settlement conference with Judge Freeman, the Parties reached a settlement in principle on July 9, 2021.  Brown Aff. ¶ 7.  It would take the Parties four more months of heated negotiations thereafter, until in or around November 2021, to finalize the settlement, which was then submitted for preliminary approval.  As such, the Settlement is procedurally fair.

**B.  The Settlement Is Substantively Fair**

In deciding whether a class action settlement is substantively fair, courts in the Second Circuit generally weigh the nine "*Grinnell* factors" set forth in the case *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974).  The *Grinnell* factors are (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the

risks of establishing damages;  (6) the risks of maintaining the class action through the trial;  (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.  *Id*.  Here, the *Grinnell* factors weigh in favor of final approval of the Settlement Agreement.

1.    Grinnell Factor No. 1: Litigation Through Trial Would be Complex, Costly, and Long

Litigating this case through trial would be complex, costly and lengthy.  "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them."  *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000).  This case is no exception.  By reaching a favorable settlement before Rule 23 class certification, dispositive motions or trial, Named Plaintiffs seek to avoid significant expense and delay, and instead ensure recovery for the Class.

Even though the Parties have already spent considerable time, effort and expense in litigating this matter, continued litigation, without settlement, would result in additional unnecessary expense and delay.  Significant discovery would be required to establish liability and damages, and a trial would feature extensive testimony by Defendants, Plaintiffs and numerous class members.  Compiling evidence to support or refute complex factual and legal issues at such a trial would consume tremendous amounts of time and resources for both sides, as well as requiring substantial judicial resources to adjudicate the parties' disputes. A trial to establish and set damages, even on a representative basis, would be costly and would further delay closure. Any judgment would likely be appealed, thereby extending the duration of the litigation. This settlement, on the other hand, makes monetary relief available to class members in a prompt and efficient manner.  Therefore, the first *Grinnell* factor weighs in favor of final approval.

2.    <u>Grinnell Factor No. 2: The Reaction of the Class Has Been Positive</u>

Here, no Class Member has opted out and no Class Member has objected to the Settlement. Brown Aff. ¶ 24; Schwartz Decl. ¶¶ 12 and 13. The Court-approved Class Notice informed Class Members of their rights under the Settlement Agreement and all material terms of the Settlement. The lack of Class Members objecting to or opting out of the Settlement is indicative of a positive response to the Settlement and evidence of its fairness. *See Toure*, 2012 U.S. Dist. LEXIS 110300 at *9 ("The class's reaction to the settlement has been positive. No class member objected or excluded himself from the settlement. 'The fact that the vast majority of class members neither objected nor opted out is a strong indication' of fairness'") (internal citations omitted). Therefore, the second *Grinnell* factor weighs in favor of final approval.

3.    <u>Grinnell Factor No. 3: Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly</u>

Even though preparing this case through trial would require significant additional discovery for both sides, and the filing and adjudication of respective summary judgment motions, the Parties have completed enough discovery to recommend settlement. The proper question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 475 (S.D.N.Y. Apr. 29, 2013), quoting *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004). The pretrial negotiations and discovery must be sufficiently adversarial that they are "not designed to justify a settlement, [but rather represent] an aggressive effort to ferret out facts helpful to the prosecution of the suit." *In re Austrian,* 80 F. Supp. 2d at 176*, aff'd sub nom. D'Amato,* 236 F.3d 78.

The Parties' discovery here meets this standard. Plaintiffs' counsel had multiple in-depth discussions with Named Plaintiffs and reviewed documents produced by them to secure information relevant to their claims and the claims of Class Members. Brown Aff. ¶ 9. Plaintiffs'

counsel further obtained and reviewed data from Defendants with respect to all potential class members, including the gross pay for each Class Member over the course of a representative period.  Brown Aff. ¶ 7.  Given the WARN Act and NY WARN Act's formulaic method of setting damages, the documents and data provided by Defendants, in addition to the information obtained by Named Plaintiffs, are more than sufficient to determine that the Settlement reached is fair and reasonable.  Therefore, the third *Grinnell* factor favors final approval.

4.    Grinnell Factor Nos. 4 and 5: Plaintiffs Would Face Real Risks if the Case Proceeded

Though Plaintiffs believe their case is strong, there is still considerable risk as to liability and damages.  In weighing the risks of establishing liability and damages, the court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement." *In re Austrian,* 80 F. Supp. 2d at 177 (internal quotations omitted). A trial on the merits would involve significant risks to Plaintiffs due to the fact-intensive nature of proving liability under the WARN Acts.  Furthermore, throughout this litigation, Defendants have proffered a number of defenses, which pose substantial risks as to both liability and damages.  Specifically, Defendants provided a notice to Plaintiffs and the Class, which Defendants assert was in substantial compliance with the requirements under the WARN Act and NY WARN Act.   Defendants also argue that any deficiencies with the notice were good faith errors which were made during the unprecedented period during the early stages of the Covid-19 pandemic.  Defendants maintain that this should significantly reduce or even eliminate any damages owed.  Finally, Defendants argue that the damages should be reduced by any Covid-19 unemployment relief benefits received by Plaintiffs and Class Members.  While Plaintiffs are adamant that there is no merit to these defenses, they acknowledge that they pose significant risk and uncertainty.  Therefore, the fourth and fifth *Grinnell* factors weigh heavily in favor of final approval.

11

     5.      <u>Grinnell Factor No. 6: Establishing a Class and Maintaining it Through Trial Would Not Be Simple</u>

The risk of obtaining and maintaining the class status through trial also weighs in favor of final approval. The Court has not yet certified the Rule 23 class, and the Parties anticipate that such a determination would be reached only after further discovery and intense, exhaustive briefing by both Parties.  Furthermore, there is a significant dispute over the scope of the class, which would further require additional discovery and motion practice.  Defendants also have experienced and skilled counsel, who will formally oppose any subsequent motion to certify Plaintiff's state-law claims under Rule 23.  Settlement would eliminate such risks, expenses, and delay inherent in this process.  Therefore, this sixth *Grinnell* factor favors final approval.

     6.      <u>Grinnell Factor No. 7: Defendants' Ability to Withstand a Greater Judgment is Not Clear</u>

Defendants, who are in the hospitality industry, maintain that due in large part to the significant economic impact wrought by the Covid-19 pandemic, they are unable to withstand a greater judgment.  For this reason, the Parties had agreed to delay payment of the Settlement Amount until the end of December 2021.  While the timing of the final approval hearing is now well past the end of December 2021, which now eliminates the risk of collection as Defendants have already deposited the Gross Settlement Amount to an escrow account held by the Settlement Administrator, a defendant's ability to withstand a greater judgment, "standing alone, does not suggest that the settlement is unfair."  *Beckman*, 293 F.R.D. at 476 (internal citation marks omitted).  As this factor is not determinative, it has no bearing on the Settlement's fairness and does not preclude the Court from granting final approval.

     7.      <u>Grinnell Factor Nos. 8 and 9: The Settlement Amount is Substantial Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation</u>

The determination of whether a settlement amount is reasonable "does not involve use of a 'mathematical equation yielding a particularized sum.'" *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. Apr. 29, 2005), quoting *In re Austrian,* 80 F. Supp. 2d at 178. "Instead, 'there is a range of reasonableness with respect to a settlement - a range which recognized the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.*, quoting *Newman v. Stein,* 464 F.2d 689,693 (2d Cir. 1972).

Here, Defendants have agreed to settle the class claims for $279,000. This represents a recovery of more than 86% of the damages calculated using the payroll data from the representative period of January 3, 2020 to March 7, 2020. Thus, each Class Member will receive an amount that is very nearly what they would receive in a possible best-case scenario were they to bring an individual action. Overall, the amount that each Class Member will receive reflects a careful balancing of the strengths of their underlying claims and the risks that their claims would not ultimately prevail. Weighing the benefits of the settlement against the risks associated with proceeding in the litigation, the settlement amount is reasonable. Accordingly, the *Grinnell* factors weigh heavily in favor of issuing final approval of the Settlement Agreement.

## II.    THE SETTLEMENT CLASS SHOULD BE CERTIFIED

### A.  The Settlement Class Meets the Legal Standard for Class Certification

On November 12, 2021, the Court conditionally certified the Settlement Class. *See* Dkt. No. 36 at *2. For the reasons set forth in Plaintiffs' preliminary approval papers and below, Plaintiffs respectfully request that the Court grant final certification of the Settlement Class as it continues to meet all of the requirements set forth in Rule 23. Fed. R. Civ. P. 23.

There are more than 40 Class Members, satisfying the numerosity requirement. "[N]umerosity is presumed at a level of 40 members." *Consol. Rail Corp. v. Town of Hyde Park,* 47 F.3d 473,483 (2d Cir. 1995).  (there are a total of 47 Class Members) Schwartz Decl. ¶ 8, 9.

The controversy in this case involves whether Cassa Hotel provided adequate notice to its employees, as required under the WARN Act and NY WARN Act, following the mass layoff in March 2020.  As each Class Member received the same notice, the claims and injuries for each Class Member are essentially identical. *See Pinsker v. Borders, Inc. (In re BGI, Inc.),* 465 B.R. 365, 375 (Bankr. S.D.N.Y. Feb. 17, 2012).  As such, the commonality and typicality requirements are met.  *Gen Tel. Co. of Sw v. Falcon*, 457 U.S. 147, 157, n. 13 (1982) (Commonality tests "whether the named Plaintiffs' claims and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence"); *see also Marisol A. by Forbes v. Giuliani,* 126 F.3d 372, 376 (2d Cir. 1997)(internal quotations omitted)(Typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability").

Regarding the adequacy of the Named Plaintiffs as Class Representatives, Named Plaintiffs have suffered the same alleged violations at the putative class, and there is no evidence or indicia that the Named Plaintiffs have interests that are antagonistic or at odds with Class Members. Therefore, the Named Plaintiffs satisfy this requirement.  *Toure,* 2007 U.S. Dist. LEXIS 74056, at *18-19, quoting *Denney v. Deutsche Bank AG,* 443 F.3d 253, 268 (2d Cir. 2006)("The adequacy requirement exists to ensure that the class representatives will 'have an interest in vigorously pursuing the claims of the class, and . . . have no interests antagonistic to the interests of other class members'").

Class Counsel, Brown Kwon & Lam, LLP (or "BKL"), also satisfies the adequacy requirement under Rule 23(g)[1]. BKL has done substantial work identifying, investigating, prosecuting, and settling the Class Members' claims; the attorneys at BKL have significant experience prosecuting and settling employment class actions; and the attorneys who worked on this matter are well-versed in employment law, the WARN Act in particular, and in class action law and are well-qualified to represent the interests of the Class. Brown Aff. ¶¶ 31-37.

### B.  Certification is also Proper Under Rule 23(b)(3)

Rule 23(b)(3) requires that common questions of law or fact "predominate over any questions affecting only individual members, and that a class action is superior to any other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Here, whether Defendants failed to provide proper notice under the WARN Act and NY WARN Act, predominates over any factual or legal variations among Class Members. Moreover, liability can be determined on a class-wide basis, even though there are some individualized variations for the damages. *See e.g., Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 107-8 (2d Cir. 2007); *Espinoza v. 953 Assocs. LLC*, 280 F.R.D. 113, 125 (S.D.N.Y. 2011). Therefore, predominance is satisfied.

The second part of the Rule 23(b)(3) analysis considers whether "the class action device [is] superior to other methods available for a fair and efficient adjudication of the controversy." *Green v. Wolf Corp.,* 406 F.2d 291, 301 (2d Cir. 1968); *Amchem Prods. v.*

---

[1] Rule 23(g) sets forth four criteria the court must consider in evaluating the adequacy of proposed counsel: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(l)(C)(i)

15

*Windsor,* 521 U.S. 591, 617 (1997) ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights."). As Plaintiffs and Class Members have limited financial resources with which to prosecute individual actions and Named Plaintiffs are unaware of any pending individual lawsuits filed by any Class Member arising out of the same allegations, certification of the Settlement Class is superior to individual adjudication and will conserve judicial resources. Therefore, a class action is a superior mechanism for resolving this dispute.

## III.    THE SERVICE AWARDS SHOULD BE AWARDED TO PLAINTIFFS

### A.  Service Awards to Named Plaintiffs

Pursuant to the Settlement Agreement, Class Counsel requests that the Court approve the Service Awards to the three Named Plaintiffs in the amount of $3,000 each, in addition to their individualized settlement awards, to be paid out of the Gross Settlement Fund.  *See,* Exhibit A, at ¶ 3.3(A).  These Service Awards total $9,000. The Service Awards that Named Plaintiffs request are reasonable given the significant contributions that they made to the investigation, negotiation and resolution of this case.  For the following reasons, the Court should approve the Service Awards.

"Service awards are common in class actions and serve to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs." *Beckman*, 293 F.R.D. at 483; *see also Reyes v. Altamarea Group*, 2011 U.S. Dist. LEXIS 115984 at *24 (S.D.N.Y. Aug. 16, 2011) (finding reasonable service awards of $15,000 each for three of the class representatives and $5,000 for one of the class representatives).

16

In examining the reasonableness of a requested service award, courts consider (1) "existence of special circumstances including the personal risk (if any) incurred by the plaintiff applicant in becoming and continuing as a litigant," (2) "the time and effort expended by that plaintiff in assisting in the prosecution of the litigation or in bringing to bear added value," and (3) "any other burdens sustained by that plaintiff in lending himself or herself to the prosecution of the claim, and of course, the ultimate recovery." *Raniere v. Citigroup Inc.*, 310 F.R.D. 211, 220 (S.D.N.Y. Sept. 29, 2015).

The *Raniere* Court further explains that:

> [S]uch awards are particularly appropriate in the employment context. In employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers. Although there is no specific measure for determining when an incentive award is justified, courts consistently focus on the existence of 'special circumstances.'"

*Id.* (approving service awards in employment cases ranging from $7,500 to $20,000), citing *Ortiz v. Chop't Creative Salad Co.*, 89 F. Supp. 3d 573 (S.D.N.Y. Jan. 16, 2015), quoting *Frank*, 228 F.R.D. at 187 (internal quotations omitted).

Here, special circumstances exist. "[A]s employees suing their current or former employer, the plaintiffs face the risk of retaliation." *Parker v. Jekyll & Hyde Entm't Holdings, L.L.C.*, 2010 U.S. Dist. LEXIS 12762 at *4 (S.D.N.Y. Feb. 9, 2010). In the employment context where workers are often blacklisted if it becomes known they brought a lawsuit against their employer," Named Plaintiffs took a risk that they might be blacklisted by filing this case by other prospective employers. *Raniere*, 310 F.R.D. at 220 ("It takes courage for any employee to challenge her employer's workplace practices . . .").

While Plaintiffs are no longer employed by Defendants and, as such, unlikely to have

"exposed themselves to the prospect of having adverse actions taken against them by their former employer and former co-workers," Courts nonetheless recognize in employment cases that Named Plaintiffs might incur the very real risk of retaliation from their current employer, and put their ability to secure *future* employment at risk as well. *See Velez v. Majik Cleaning Serv.*, 2007 U.S. Dist. LEXIS 46223 at *23; *see also Guippone*, 2011 U.S. Dist. LEXIS 126026 at *20 ("Today, the fact that a plaintiff has filed a federal lawsuit is searchable on the internet and may become known to prospective employers when evaluating the person."); *see also Silberblatt v. Morgan Stanley*, 524 F. Supp. 2d 425, 435 (S.D.N.Y. 2007) ("A class representative who has been exposed to a demonstrable risk of employer retaliation or whose future employability has been impaired may be worthy of receiving an additional payment, lest others be dissuaded"). Furthermore, "[e]ven when there is not a record of actual retaliation, . . . class representatives merit recognition for assuming the risk of such for the sake of absent class members." *Guippone*, 2011 U.S. Dist. LEXIS 126026 at *20.

The Named Plaintiffs also initiated the prosecution of this action and expended considerable time and effort to assist with this case. Their services included, but were not limited to, the following: providing Class Counsel with factual information regarding Defendants' WARN Act and NY WARN ACT notice; providing relevant documents in their possession; assisting with the investigation of the viability of class certification; assisting Class Counsel with drafting their individual responses to Defendants' discovery requests; and being available to speak to Class Counsel to assist with the factual investigation and settlement negotiations. Brown Aff. ¶ 26. Their efforts were instrumental in the ultimate resolution and recovery in this case.

The $9,000 total in Service Awards represent approximately 3% of the Gross

Settlement Fund. This is well within the range of service awards recently approved in the Southern District of New York. *See e.g.*, *Emeterio v. A& P Rest. Corp.*, 2022 U.S. Dist. LEXIS 14598 at *31 (S.D.N.Y. Jan. 26, 2022) (approving service awards totaling $30,000 from a $450,000 settlement fund (6.6%)). Lastly, the Court-approved Class Notice informed Class Members of the Service Awards to be requested and paid from the Gross Settlement Amount, and no Class Member has objected to the Service Awards. Brown Aff. ¶ 27. For the foregoing reasons, Named Plaintiffs respectfully request that the Court approve Service Awards of $3,000 to each of the Named Plaintiffs in recognition of the valuable services they rendered on behalf of the Class.

### B. General Release Payments to Named Plaintiffs

In addition to the above Service Awards, Named Plaintiffs are further requesting approval of Release Payments of $7,000 for each of the Named Plaintiffs, which are made in consideration for a general release which encompasses claims beyond those which are being released by the Class. Exhibits A, at ¶ 3.3(B). Such payments are typically approved by courts in employment class actions where, as here, the named plaintiffs provided general releases beyond the underlying claims at issue in the litigation. *See, e.g., Chang v. Philips Bryant Park LLC,* 2020 U.S. Dist. LEXIS 99985 at *8 (S.D.N.Y. June 5, 2020) ("The Court also approves the requested release payment to the named plaintiff . . . in the amount of $20,000 in return for his General Released Claims, as defined in the Settlement Agreement . . . These amounts shall be paid from the Settlement Fund"); *Delijanin v. Wolfgang's Steakhouse, Inc.*, 18-cv-7854(LJL)(KHP), 2021 U.S. Dist. LEXIS 27462 at *18 (S.D.N.Y. Feb. 12, 2021); *Baten v. Mr. Kabob Rest. Inc.*, No. 16-cv-9559 (VSB), 2019 U.S. Dist. LEXIS 234811, 2019 WL 11274597, at *3 (S.D.N.Y. Oct. 18, 2019) (approving a release payment for a named plaintiff's general release); Order, *Maisanche v.*

19

*Paola Painting and Renovations LLC et al.*, No. 16-cv-07697 (S.D.N.Y. May 3, 2018), ECF No. 54 (approving $20,000 release payment for named plaintiff's global release of all potential claims, including claim for retaliation); Order at 23, *Mariani et al. v. OTG Managements, Inc. et al.*, No. 16-cv-01751 (E.D.N.Y. Nov. 15, 2018) (approving $10,000 release payment in light of plaintiff's retaliation claim unrelated to the wage and hour allegations).

For the foregoing reasons, Named Plaintiffs respectfully request that the Court approve the General Release Payments of $7,000 for each of the Named Plaintiffs as consideration fora general release of claims.

## IV.  CLASS COUNSEL'S ATTORNEYS' FEES SHOULD BE APPROVED

The WARN Act provides that "in any suit, the court, in its discretion, may allow the prevailing party a reasonable attorneys fee as part of the costs."  29 U.S.C. § 2104(a)(6). Similarly, the NY WARN ACT provides that "[t]he court may award reasonable attorneys' fees as part of costs to any plaintiff who prevails in a civil action brought under this article." N.Y.L.L. § 860-g.

Moreover, "[w]here an attorney creates a common fund from which members of a class are compensated for a common injury, the attorneys who created the fund are entitled to 'a reasonable fee—set by the court—to be taken from the fund." *In re Interpublic Secs.*, 2004 U.S. Dist. LEXIS 21429 at *10 (S.D.N.Y. Oct. 26, 2004).  Courts in the Second Circuit use either the percentage or lodestar method in calculating attorneys' fees in class action settlements.  *Goldberger*, 209 F.3d at 50.  The trend in the Second Circuit has been to use the percentage method as it "reduces the incentive for counsel to drag the case out to increase the number of hours billed . . . and fewer judicial resources will be spent in evaluating the fairness of the fee petition."  *Hicks v. Morgan Stanley & Co.*, 2005 U.S. Dist. LEXIS 24890 (S.D.N.Y.

Oct. 19, 2005); *see also Wal-Mart Stores*, 396 F.3d at 121. Here, Plaintiffs' Unopposed Motion for Final Approval includes a request for attorneys' fees of one-third of the Gross Settlement Amount, or $100,000. Brown Aff. ¶ 28, Exhibit A, at ¶ 3.2(A).

The Court-approved Class Notice informed Class Members that Class Counsel will apply to the Court for attorneys' fees in the amount of one-third of the Gross Settlement Amount. See, Exhibit A to Schwartz Decl. No Class Member has objected to Class Counsel's request for attorneys' fees. Brown Aff. ¶ 29; Schwartz Decl. ¶ 13. As there are no opt-outs, the positive reception of the Class Members weighs strongly in favor of approval of the one-third attorneys' fee request.

### A. The Proposed Fee is Reasonable Under the Six *Goldberger* Factors

In approving attorneys' fees, Courts in the Second Circuit consider six factors set forth in *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2d Cir. 2000). The *Goldberger* factors are: (a) the time and labor expended by counsel; (b) the magnitude and complexities of the litigation; (c) the risk of litigation; (d) the quality of representation; (e) the requested fee in relation to the settlement; and (f) public policy considerations. *Id*. All of the *Goldberger* factors weigh in favor of granting approval of Class Counsel's requested attorneys' fees.

#### 1.    Time and Labor Expended by Counsel

Although the Parties settled relatively early in the litigation process, Class Counsel nonetheless devoted a substantial amount of time and energy to the case and will be required to expend additional time following final approval of the settlement to administer the settlement with the Settlement Administrator. Class Counsel investigated the claims and potential defenses in this action prior to filing the complaint, the underlying merits of the claims, the likelihood of class recovery, the damages to which they are entitled, and the

propriety of class certification.  Brown Aff. ¶ 9.  The Parties engaged in extensive settlement discussions before requesting for a settlement conference before Magistrate Judge Freeman. Prior to the settlement conference, the Parties engaged in discovery for the purposes of ascertaining the class-wide damage liability for the alleged WARN violations, and served formal discovery requests.  Id.  Following Class Counsel's calculation of the class-wide damage liability analysis, the Parties continued to engage in lengthy settlement discussions until the Parties were able to reach a settlement, which resulted in a substantial recovery for the Class, a settlement fund that represented an approximate 86% recovery of their estimated Class damages.  Brown Aff. ¶ 7.  Even though the Parties reached a settlement in principle in or around July 2021, Class Counsel continued to engage heated negotiations over the course of the following four months to draft a comprehensive Settlement Agreement and to prepare the Motion for Preliminary Approval of the Class Action Settlement.  Brown Aff. ¶ 8.  Since reaching the Settlement, Class Counsel has responded to inquiries from at least three (3) Class Members and coordinated with the Settlement Administrator regarding the Settlement and the mailing of the Court-approved Class Notice.  Brown Aff. ¶ 24.

Thus far, BKL has spent 137 attorney hours prosecuting this case, as reflected in the contemporaneous time records.  Brown Aff. ¶ 30, Exhibit C.  Class Counsel has thus far worked without compensation.  "The requested attorney fee is not based solely on time and effort already expended; rather, it is meant to compensate Class Counsel for all of the time it has spent and will be required to spend taking part in administering the settlement in the future." *Guippone*, 2011 U.S. Dist. LEXIS 126026 at *31.  Therefore, the first factor weights in favor of approval.

2.     The Magnitude and Complexities of the Litigation

Courts have recognized that cases involving mixed questions of fact and law are complex. *Frank*, 228 F.R.D. at 189 (finding in favor of counsel's requested attorneys' fee award as "issues raised in plaintiffs' claims involve mixed questions of fact and law"). Here, Defendants deny the material factual allegations set forth in Plaintiffs' Class Action Complaint and have asserted multiple affirmative defenses, including the "unforeseeable business circumstances" exception to the notice requirements of the WARN Act and NY WARN ACT. *See* Dkt. No. 15, ¶¶ 45-50, 81. Class Counsel also face risks in obtaining class certification. While Class Counsel is confident that Plaintiffs would ultimately succeed in obtaining class certification, class certification would nonetheless require extensive discovery and briefing before reaching such a disposition. As such, the magnitude and complexities of this litigation favors granting the requested attorneys' fees.

        3.    <u>Risk of Litigation</u>

The risks of litigation were significant in this matter as Class Counsel agreed to represent Named Plaintiffs and the Class on a contingency basis. "Contingency risk is the principal, though not exclusive, factor courts should consider in their determination of attorneys' fees." *Sukhnandan v. Royal Health Care of Long Island LLC*, 2014 U.S. Dist. LEXIS 105595 at *32 (S.D.N.Y. July 31, 2014), quoting *In re Dreyfus Aggressive Growth Mut. Fund Litigation*, 2001 U.S. Dist. LEXIS 8418 at *6 (S.D.N.Y. June 22, 2001).

In contingency cases, "the percentage of recovery awards of attorneys' fees are appropriate even though such awards are often greater than those awards that would be granted to attorneys under the lodestar method . . . The attorneys take upon themselves the risk that the litigation will not be successful, including the risks of non-reimbursed expenditures and the opportunity cost of attorney time dedicated to the case." *Hicks*, 2005

U.S. Dist. LEXIS 24890 at *25-26.  As such, "[a]ttorneys in contingency cases reasonably should expect higher fees than would be had if they were guaranteed such fees up-front whether or not the party receives any relief."  *Id.*

"Risk should be considered 'as of when the case is filed.'"  *In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d at 351 (quoting *Goldberger*, 209 F.3d at 55).  At the onset, the underlying claims were risky to litigate as notices pursuant to the WARN Act and NY WARN ACT were indeed provided to Defendants' employees whose employment was terminated in March 2020 in light of the Covid-19 pandemic, although Plaintiffs allege that such notices were deficient.  There was significant risk as to whether or not exceptions would apply or be made for "unforeseeable business circumstances" in light of the unprecedented nature of the Covid-19 pandemic.  If the Court agreed with Defendants, Plaintiffs' recovery would be significantly less, or even result in no recovery at all.

Moreover, class certification requires attorneys to invest enormous time, energy and resources in order to obtain certification.  Even so, there is inherent risk in whether the court would grant class certification under Rule 23, and even risk of decertification following the extensive briefing necessary to obtain class certification in the first place, thereby risking any attempt at a class-based recovery.

While Plaintiffs believe they would ultimately prevail, these examples demonstrate the risk of the underlying claims from the onset of litigation, risk borne by Class Counsel, and the risk of continuing to litigate the underlying claims and how Plaintiffs could lose and recover nothing.  Here, the Settlement alleviates such concerns and provides Plaintiffs and the Class with recovery of nearly 86% of their estimated "best case scenario" class-wide damages.  As such, these risks weigh heavily in favor of the requested attorneys' fee.  *Raniere*, 310 F.R.D.

at 221 (finding in favor of the requested attorneys' fees, "Class counsel [has] obtained a large settlement for the Plaintiffs despite significant questions . . . about whether they can make the legal and factual showing necessary to prevail").

4. Quality of Representation

"To determine the quality of the representation, courts review . . . the recovery obtained and the background of the lawyers involved in the lawsuit." *Beckman*, 293 F.R.D. at 480, quoting *Taft v. Ackermans*, 2007 U.S. Dist. LEXIS 9144 at *1 (S.D.N.Y. Jan. 31, 2007). In the herein matter, Defendants have agreed to pay a total of $279,000 to settle the class claims in this litigation, which amounts to a recovery of approximately 86% of the Class's "best case scenario" class-wide damages. Brown Aff. ¶ 7.

"Courts have viewed counsel's experience in wage and hour cases as directly responsible for a favorable settlement." *Beckman*, 293 F.R.D. at 481. Each of the partners at BKL have extensive experience in employment litigation, including employment class action lawsuits, employment discrimination lawsuits, and single and multi-plaintiff actions under the FLSA and NYLL. Brown Aff. ¶ 36. BKL was formed, with Mr. Brown as one of the partners, with the purpose of representing employees in employment-related matters. Brown Aff. ¶ 37. The partners at BKL have prosecuted dozens of large, complex employment class actions, including, but not limited to *Robreno v. Eataly America, Inc., No.* 17-cv-9361 (S.D.N.Y.)*; Vazquez v. Eataly America, Inc.*, Index No. 156933/2018 (N.Y. Cty. Supreme); *Uraga v. Amici 519 LLC*, No. 17-cv-3547 (S.D.N.Y.); *Fteja v. Nusret New York LLC.*, 19-cv-429 (S.D.N.Y.); *Hernandez v. Between the Bread 55th Inc.*, 17-cv-9541 (S.D.N.Y.); *Paniagua v. Havana Cafe, LLC*, 18-cv-7038 (S.D.N.Y.); *Tendilla et al v. Pearlstone Restaurant, LLC*, 18-cv-8900 (S.D.N.Y.); among others. Lead Class Counsel is an experienced employment attorney.

William Brown graduated from Hofstra University School of Law in 2012.  During his career, Mr. Brown worked at various firms in New York representing employers and employees on wage and hour class and collective actions, with a focus in the hospitality industry.  Brown Aff. ¶ 36.

As Class Counsel obtained a large recovery for the Class and has significant experience litigating employment class action lawsuits, this factor weighs in favor of approving the requested attorneys' fee.

### 5.   Fee in Relation to the Settlement

Under *Goldberger*, "Courts consider the size of a settlement to ensure that the percentage awarded does not constitute a windfall."  *Sukhnandan v. Royal Health Care of Long Island LLC,* 2014 U.S. Dist. LEXIS 105596 at *38 (S.D.N.Y. July 31, 2014).  "Where the size of the fund is relatively small, courts typically find that requests for a greater percentage of the fund are reasonable." *Id.* (citing *In re Gilat Satellite Networks, Ltd.*, 2007 U.S. Dist. LEXIS 68964 at *16, n.41 (E.D.N.Y. Sept. 18, 2007)).  Here, Class Counsel is requesting one-third of the $300,000 Gross Settlement Amount.  Given that the size of the fund is relatively small for a class action lawsuit, it does not require a "sliding scale" approach to prevent a windfall.  A "one-third fee is commonly awarded in WARN Act cases," and Courts have found reasonable and approved attorneys' fees in cases where the class settlement fund was substantially larger than this one.  *Knapp v. Badger Techs., Inc.*, 2015 U.S. Dist. LEXIS 77186, at *14-15 (W.D.N.Y. June 15, 2015), citing *Guippone v. BH S&B Holdings, LLC*, 2011 U.S. Dist. LEXIS 126026, 24-27 (S.D.N.Y. Oct. 28, 2011); *see also Maley v. Del Global Techs. Corp*, 186 F. Supp. 2d 358, 370 (S.D.N.Y.) (awarding 1/3 of the settlement valued at $11.5 Million).  Additionally, the fact that Plaintiffs agreed in their retainer

agreements that the attorneys' fee would be one-third of any recovery provides support for the fee request. *Beckman*, 293 F.R.D. at 477-78. As such, the requested attorneys' fee should be approved by the Court.

6.    Public Policy Considerations

"When determining whether a fee award is reasonable, courts consider the social and economic value of the class action, and 'the need to encourage experienced and able counsel to undertake such litigation.'" *Siler v. Landry's Seafood House-North Carolina, Inc.,* 2015 U.S. Dist. LEXIS 90088, at *11, quoting *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 399 (S.D.N.Y. 1999). As such, public policy considerations favor approval of Class Counsel's requested attorneys' fees as "were it not for this class action, many of the plaintiffs' claims likely would not be heard. In addition, if this Court denied an award of fees sufficient to compensate counsel for at least a substantial portion of the work it has performed, no attorneys – these or others – would likely be willing to take on future small-scale class actions such as this." *Frank*, 228 F.R.D. at 189-190 (approving class counsel's fee request of 40% of the settlement fund). Public policy further favors Court approval of the requested attorneys' fees as "class actions are invaluable safeguard for public rights." *Beckman*, 293 F.R.D. at 481.

**B. The Lodestar Cross Check Further Supports an Award to Class Counsel of One-Third of the Gross Settlement Fund**

Following *Goldberger*, courts also apply a "cross check" on the reasonableness of the requested percentage for class counsel's attorneys' fees by using the lodestar method as a baseline. 209 F.3d at 50; *see also Raniere*, 310 F.R.D. at 221. Where the lodestar method is simply used as a "cross-check," the Court does not need to scrutinize Class Counsel's documentation of hours expended on the case in the same depth as is appropriate where the lodestar is used as the sole fee determination. *Hicks*, 2005 U.S. Dist. LEXIS 24890 at *10;

*see also Goldberger*, 209 F.3d at 50.

Thus far, Class Counsel has spent 137 attorney hours prosecuting this case, which is a total of approximately $54,800 for Class Counsel's lodestar amount. Brown Aff. ¶ 30, Exhibit C. Class Counsel's request for one-third of the Gross Settlement Amount for attorneys' fees, an amount of $100,000, results in about a two times multiplier of the lodestar amount. Class Counsel's multiplier of 1.82 times is reasonable and falls within the range of multipliers that courts in the Second Circuit have allowed. *Beckman*, 293 F.R.D. at 481-82 ("Courts regularly award lodestar multipliers of up to eight times the lodestar, and in some cases, even higher multipliers"). Indeed, the Southern District has held that a "multiplier of 2.09 is at the lower end of the range of multipliers awarded by courts within the Second Circuit." *In re Lloyd's Am. Trust Fund Litig.*, 2002 U.S. Dist. LEXIS 22662 at *27 (S.D.N.Y. Nov. 26, 2002).

For the purposes of calculating the lodestar, Plaintiffs are seeking an hourly rate of $400.00 each for the work of Mr. Brown, Ms. Kwon, and Ms. Lam, which is reasonable in this case. *See, e.g.,* United States ex rel. Fox Rx, Inc. v. Omnicare, Inc., No. 12 Civ. 275 (DLC), 2015 U.S. Dist. LEXIS 49477, 2015 WL 1726474, at *2 (S.D.N.Y. Apr. 15, 2015) (approving rate of $836/hour for partners, $631.75/hour for eighth-year associate, and $541.50/hour for fourth-year associate in FCA case) Beastie Boys v. Monster Energy Co., 112 F. Supp. 3d 31, 55 (S.D.N.Y. 2015) (approving partner rates of $675 per hour); Broad. Music, Inc. v. Pamdh Enters., Inc., No. 13-cv-2255 (KMW), 2014 U.S. Dist. LEXIS 84409, 2014 WL 2781846, at *7 (S.D.N.Y. June 19, 2014) (collecting cases awarding $400 to $735 per hour for partners).

Lastly, BKL is not separately seeking costs for either the filing fee or service costs, which are normally requested along with attorneys' fees. For the foregoing reasons, the Court should approve Class Counsel's attorneys' fees of $100,000.

## V.    THE SETTLEMENT ADMINISTRATOR'S FEES ARE REASONABLE

The Parties retained RUST, an experienced class action settlement administrator, as the Settlement Administrator for the Settlement.  RUST has provided notification and/or claims administration services in more than 7,500 cases, of which nearly half were for Labor & Employment cases.  Schwartz Decl. ¶ 2.  RUST has disseminated the Court-approved Class Notice to Class Members, performed calculations of awards to each Class Member, maintained correspondences with Class Members, and upon final approval of the Settlement Agreement, will be charged with disbursing the settlement checks to the Class.  Schwartz Decl. ¶¶ 3-7.

On December 1, 2021, the Court-approved Class Notice was mailed via First Class Mail to 46 of the Class Members pursuant to the class list provided by Defendants.  Schwartz Decl. ¶ 8.  RUST also emailed the Court-approved Class Notice to 45 of the Class Members for whom Defendants possessed email addresses.  Id.  For these Class Members, the Bar Date was February 1, 2022.  Id.  On January 12, 2022, RUST was informed of an additional Class Member, and as such, had mailed a Class Notice to the additional Class Member on January 14, 2022.  Schwartz Decl. ¶ 9.  The additional Class Member's Bar Date was extended from February 1, 2022 to February 28, 2022.  Id.  As of March 1, 2022, RUST did not receive any class notices that were returned as undeliverable.  Schwartz Decl. ¶ 10.  As of March 1, 2022, RUST did not receive any opt-outs or objections.   Schwartz Decl. ¶ 12.

The Parties agreed to pay administration fees of up to $10,000, to be paid from the Gross Settlement Fund, to the Settlement Administrator for reimbursement of their actual costs and expenses, which is consistent with prevailing market rates.  Brown Aff. ¶ 20, Exhibit A, at 3.4(A).  Administration fees in this amount are routinely found to be reasonable given

the extensive work necessary to administer the Settlement.  Therefore, Plaintiffs respectfully request that the Court approve $10,000 as fair and reasonable for the Settlement Administrator's fees.

<u>**CONCLUSION**</u>

For the reasons set forth above, Plaintiffs respectfully request that the Court enter the attached Proposed Order and grant: (1) Final Approval of the Class Action Settlement, (2) Certification of the Settlement Class, (3) Approval of Class Counsel's Attorneys' Fees, (4) Approval of the Service and General Release Payments to Named Plaintiffs, (5) Approval of Settlement Administrator's Fees, and (6) Dismissal of this Action with Prejudice.

Dated: March 4, 2022                    Respectfully submitted,

New York, New York              **BROWN KWON & LAM, LLP**

By:     */s/ William Brown*

William Brown, Esq.
521 Fifth Avenue, 17th Floor
New York, NY 10175
Tel.: (212) 295-5828
Fax: (718) 795-1642
wbrown@bkllawyers.com
*Attorneys for Plaintiff*s
4884-5840-1042, v. 1